O

```
                                    FILED
                          CLERK, U.S. DISTRICT COURT

                                MAR - 9 2015

                          CENTRAL DISTRICT OF CALIFORNIA
                          BY              DEPUTY
```

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

RUSSELL T. PASOS,

           Plaintiff,

        vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

           Defendant.

Case No. EDCV 14-1334 RNB

ORDER REVERSING DECISION OF
COMMISSIONER AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS

The Court now rules as follows with respect to the two disputed issues listed in the Joint Stipulation.[1]

## A. The ALJ failed to make a proper adverse credibility determination (Disputed Issue Two).

Disputed Issue Two is directed to the ALJ's adverse credibility determination

---

[1]    The decision in this case is being made on the basis of the pleadings, the administrative record ("AR"), and the Joint Stipulation ("Jt Stip") filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

1  with respect to plaintiff's subjective symptom testimony. (See Jt Stip at 19-27.)

2  An ALJ's assessment of pain severity and claimant credibility is entitled to
3  "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v.
4  Heckler, 779 F.2d 528, 531 (9th Cir. 1986). Under the "Cotton test," where the
5  claimant has produced objective medical evidence of an impairment which could
6  reasonably be expected to produce some degree of pain and/or other symptoms, and
7  the record is devoid of any affirmative evidence of malingering, the ALJ may reject
8  the claimant's testimony regarding the severity of the claimant's pain and/or other
9  symptoms only if the ALJ makes specific findings stating clear and convincing
10  reasons for doing so. See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see
11  also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12
12  F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991)
13  (en banc).

14  Plaintiff testified that he was disabled because of a lumbar spine disorder,
15  bilateral lower extremity radiculopathy, and obesity. (See AR 40.) Plaintiff also
16  testified that he had considered back surgery but eventually decided not to have the
17  surgery because it had a "50/50" chance of success and a risk that it would make his
18  back condition worse. (See AR 49.) Plaintiff also testified that his conditions limited
19  him to walking for 15 minutes at a time, standing for 15-20 minutes at a time, sitting
20  for 30 minutes at a time, and lifting 15 pounds; he also testified that he had to lie
21  down for 2-3 hours per day. (See AR 51, 59, 61.) Plaintiff also testified that his daily
22  activities included driving his daughter to a school that was one mile from home,
23  cooking meals, doing household chores and shopping with the help of his daughter,
24  and using the computer. (See AR 52-55.)

25  The ALJ determined that although plaintiff's medically determinable
26  impairments could reasonably be expected to cause the alleged symptoms, plaintiff's
27  statements concerning the intensity, persistence, and limiting effects of these
28  symptoms were not credible to the extent they were inconsistent with the ALJ's

residual functional capacity assessment. (<u>See</u> AR 24.) In support of this adverse credibility determination, the ALJ proffered three reasons. (<u>See id.</u>) The Court finds that none of these reasons was legally sufficient to support the ALJ's adverse credibility determination.

First, the ALJ found that, although plaintiff's daily activities were "somewhat limited," they were inconsistent with the presence of an incapacitating or debilitating condition and involved the same abilities as those necessary for obtaining and maintaining employment. (<u>See id.</u>) In general, an ALJ may base an adverse credibility determination on evidence of a claimant's daily activities on two grounds: the stated activities contradict the claimant's other testimony, or they meet the threshold for transferable work skills. <u>See Orn v. Astrue</u>, 495 F.3d 625, 639 (9th Cir. 2007). Here, while it appears that the ALJ attempted to invoke both grounds, the ALJ specifically supported only the first ground by finding that plaintiff's testimony about his limitations was inconsistent with his stated activities, which included performing some household chores, cooking meals, driving his daughter to school, and shopping for groceries. (<u>See</u> AR 24.) However, the Court finds no such inconsistency when plaintiff's testimony about his activities are considered in its full context, which reflected that plaintiff did them for only short periods or with substantial assistance from his daughter, who did most of the household chores (<u>see</u> AR 53). <u>See Ghanim v. Colvin</u>, 763 F.3d 1154, 1165 (9th Cir. 2014) (ALJ improperly relied on evidence of claimant's daily activities for adverse credibility determination where claimant stated she performed only limited activities, sometimes with help); <u>Reddick v. Chater</u>, 157 F.3d 715, 722-23 and n.1 (9th Cir. 1998) (same where ALJ did not properly consider claimant's statements about her daily activities in full context, which indicated claimant performed them with weakness and fatigue, requiring periodic rest).

Second, the ALJ found that plaintiff received generally conservative medical treatment, including prescription pain medication and physical therapy exercises

1   performed at home. (See AR 24.) In general, "evidence of conservative treatment is
2   sufficient to discount a claimant's testimony regarding severity of an impairment."
3   Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007). Here, however, the Court finds
4   that this stated reason is legally insufficient because the ALJ failed to identify any
5   specific evidence that demonstrated the conservative nature of plaintiff's treatment.
6   See id. at 750 ("The ALJ must provide 'clear and convincing' reasons to reject a
7   claimant's subjective testimony, by specifically identifying 'what testimony is not
8   credible and what evidence undermines the claimant's complaints.'") (quoting Lester
9   v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)); see also Treichler v. Commissioner of
10  Social Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) (ALJ's adverse credibility
11  determination consisting of a "vague allegation" without specific findings in support
12  of that conclusion is insufficient for courts' review). Moreover, the record reflects
13  that plaintiff underwent treatment that the Court doubts could be properly
14  characterized as conservative – epidural injections, physical therapy, narcotic
15  medications, and Oxycodone every 4-6 hours – and that provided only limited relief
16  (see AR 344). See Garrison v. Colvin, 759 F.3d 995, 1015 and n.20 (9th Cir. 2014)
17  (rejecting ALJ's adverse credibility determination premised on supposedly
18  conservative treatment where record showed that claimant underwent epidural steroid
19  shots to the neck and lower back and that claimant received only limited relief from
20  therapy).

21        Third, the ALJ found that plaintiff had decided against spinal surgery. (See AR
22  24.) The record reflects that plaintiff agreed to undergo spinal surgery in October
23  2011 (see AR 357), but plaintiff testified that he later decided not to have the surgery
24  because it had a "50/50" chance of success and a risk that it would make his back
25  condition worse (see AR 49). In general, a claimant seeking disability benefits must
26  follow prescribed treatment that *can restore his ability to work*, unless the claimant
27  has a good reason for not following the prescribed treatment. See 20 C.F.R. §§
28  404.1530, 416.930 (emphasis added). Here, the ALJ failed to make any finding that

spinal surgery could have restored plaintiff's ability to work.  Indeed, the record reflects that the physician who advised plaintiff to have spinal surgery offered no opinion as to the surgery's probability of success or plaintiff's likely level of functioning after the surgery (see AR 355-57). See Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir. 1995) (rejecting adverse credibility determination premised on claimant's alleged failure to follow prescribed treatment where ALJ failed to make requisite finding that, inter alia, treatment would enable claimant to return to work); Dodrill, 12 F.3d at 919 (9th Cir. 1993) (rejecting non-disability determination premised on claimant's failure to follow prescribed treatment where ALJ failed to make any factual finding that claimant could reasonably remedy her condition with prescribed treatment); Orn, 495 F.3d at 638 (rejecting adverse credibility determination premised on claimant's failure to follow obesity treatment that was "very unlikely to be successful"); see also Weakley v. Heckler, 795 F.2d 64, 66 (10th Cir. 1986) (reversing ALJ's non-disability determination premised on claimant's failure to undergo back surgery where the record did not contain substantial evidence that the proposed surgery would restore claimant's ability to work); Fraley v. Secretary of Health and Human Services, 733 F.2d 437, 440 (6th Cir. 1984) (same); Jones v. Heckler, 702 F.2d 950, 953 (11th Cir. 1983) (same); Schena v. Secretary of Health and Human Services, 635 F.2d 15, 19 (1st Cir. 1980) (same).

Accordingly, the Court finds that reversal is warranted based on the ALJ's failure to make a proper adverse credibility determination.[2]

---

[2]      Although the Commissioner cites findings made by the ALJ in other portions of her opinion that purportedly support this part of her adverse credibility determination (see Jt Stip at 26-27), the ALJ did not specifically link these findings to her adverse credibility determination. Accordingly, the Court does not consider them as part of that determination. See Burrell v. Colvin, 775 F.3d 1133, 1139 (9th Cir. 2014) (rejecting link between ALJ's findings about medical record and adverse credibility determination elsewhere in the opinion where the ALJ "never stated that
(continued...)

**B.** **The ALJ failed to properly consider the treating and examining physicians' opinions (Disputed Issue One).**

Disputed Issue One is directed to the ALJ's consideration of the opinions of Dr. Levy (a treating physician) and Dr. Steiger (an examining physician). (See Jt Stip at 6-19.)

The law is well established in this Circuit that a treating physician's opinions are entitled to special weight because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. See McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. See Lester, 81 F.3d at 830; Baxter v. Sullivan, 923 F.3d 1391, 1396 (9th Cir. 1991). Where, as here, the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. See, e.g.,

---

[2](...continued)
he rested his adverse credibility determination on those findings" and "did not make a specific finding linking a lack of medical records to Claimant's testimony"); Gonzalez v. Sullivan, 914 F.2d 1197, 1201-02 (9th Cir. 1990) (rejecting link between ALJ's finding of possibly adverse evidence and adverse credibility determination in other portion of decision where ALJ did not "specifically link" the evidence to his conclusion that claimant's excess pain testimony lacked credibility); see also Vasquez v. Astrue, 572 F.3d 586, 592 (9th Cir. 2009) (declining to attribute ALJ's discussion of physicians' opinions to adverse credibility determination in other portion of ALJ's decision).

1  Reddick, 157 F.3d at 725 ("A treating physician's opinion on disability, even if
2  controverted, can be rejected only with specific and legitimate reasons supported by
3  substantial evidence in the record."); Magallanes, 881 F.2d at 751; Winans v. Bowen,
4  853 F.2d 643, 647 (9th Cir. 1987).

5  Moreover, to reject the uncontradicted opinion of an examining physician, an
6  ALJ must provide "clear and convincing" reasons. Where, as here, the examining
7  physician's opinion is contradicted by that of another doctor, the ALJ must provide
8  "specific and legitimate" reasons that are supported by substantial evidence in the
9  record. See Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d
10  1294,1298-99 (9th Cir. 1999); Lester, 81 F.3d at 830-31; Andrews v. Shalala, 53 F.3d
11  1035, 1041 (9th Cir. 1995); see also Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th
12  Cir. 2005).

13  For the following reasons, the Court finds that the ALJ failed to provide legally
14  sufficient reasons to reject the opinions of the treating and examining physicians.
15
16  1.   Dr. Levy's Opinions

17  Dr. Levy issued four opinions and a completed questionnaire concerning
18  plaintiff's level of functioning and/or ability to work. First, in August 2011, Dr. Levy
19  wrote a letter stating that plaintiff's back injury rendered plaintiff unable to do any
20  kind of work that he had been trained to do for at least one full year. (See AR 313.)
21  Second, in September 2011, Dr. Levy wrote another letter stating essentially the same
22  thing. (See AR 312.) Third, in July 2012, Dr. Levy wrote another letter stating that
23  plaintiff had received only limited relief from his back pain despite several types of
24  treatment and that plaintiff could not do any competitive work for at least 12 months.
25  (See AR 344-45.) Accompanying this letter was a completed questionnaire in which
26  Dr. Levy stated, inter alia, that plaintiff would be limited to sitting for 2 hours in an
27  8-hour workday, standing or walking for zero to 1 hour in an 8-hour workday, and
28  lifting or carrying 20 pounds. (See AR 347-53.) Fourth, in May 2013, Dr. Levy

1   wrote another letter stating, inter alia, that plaintiff's back condition would cause him
2   to be absent from work more than 3 days per month.  (See AR 354.)

3       The ALJ purported to give "little weight" to Dr. Levy's opinions for three
4   reasons.  (See AR 26-27.)  First, the ALJ found that Dr. Levy's conclusion that
5   plaintiff was unable to work concerned an issue reserved to the Commissioner and
6   was not entitled to controlling weight or special significance.  (See AR 26.)  While
7   the Court concurs that a disability determination involves an issue reserved to the
8   Commissioner, the ALJ still could not reject Dr. Levy's opinion without proffering
9   legally sufficient reasons, especially because the opinion was based on objective
10  medical evidence.  See Hill v. Astrue, 698 F.3d 1153, 1160 (9th Cir. 2012) (ALJ was
11  required to consider physician's opinion that claimant was "unlikely" to work full
12  time because it was an assessment based on objective medical evidence); see also
13  Reddick, 157 F.3d at 725 (ALJ must provide legally sufficient reasons to reject a
14  treating physician's opinion on the ultimate issue of disability).

15      Second, the ALJ found that Dr. Levy had provided minimal diagnostic findings
16  to support his functional assessment.  (See AR 27.)  To the contrary, the record
17  reflects several diagnostic and clinical findings by Dr. Levy, including findings that
18  plaintiff had lumbago, lumbar radiculitis, cervical spondylosis, sciatica, and lumbar
19  disc disease; and that the conditions manifested lumbar back spasms, neurologic
20  deficits, weakness of the lower extremities, limited range of motion, tenderness,
21  swelling, reflex changes, trigger points, and positive straight leg testing.  (See AR
22  344, 347-48.)

23      Third, the ALJ found that Dr. Levy's opinions were inconsistent with the
24  findings of an examining physician, Dr. Bernabe.  (See AR 27; see also AR 308-09.)
25  However, the presence of a conflict between the opinions of Dr. Levy and Dr.
26  Bernabe was merely determinative of the standard to be applied to the ALJ's
27  proffered reasons for not crediting the opinion of Dr. Levy; it was not a legally
28  sufficient reason in itself.  See Lester, 81 F.3d at 830 (in event of conflict in the

8

medical opinion evidence, an ALJ still must provide legally sufficient reasons to reject a treating or examining physician's opinion); see also Widmark v. Barnhart, 454 F.3d 1063, 1066-67 and n.2 (9th Cir. 2006) (existence of a conflict among the medical opinions by itself cannot constitute substantial evidence for rejecting a treating physician's opinion).

Accordingly, the Court finds that reversal also is warranted based on the ALJ's failure to properly consider the treating physician's opinion.

### 2.   Dr. Steiger's Opinion

Dr. Steiger, an examining physician, issued an opinion based on his examination of plaintiff in August 2013. (See AR 368-75.) Dr. Steiger opined that plaintiff's back condition rendered him unable to sit, stand, or walk continuously in a work setting and that plaintiff was unable to perform full-time competitive work. (See AR 374, 375.)

The ALJ gave "little weight" to Dr. Steiger's opinion for four reasons. (See AR 27.) First, the ALJ noted that Dr. Steiger's opinion was obtained through a referral by plaintiff's attorney. (See id.) However, the Ninth Circuit has held that an ALJ may not use the purpose for which a medical opinion was obtained, by itself, as a justification for discrediting the opinion. See Lester, 81 F.3d at 832 ("The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them. An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner."); Reddick, 157 F.3d at 726 ("Our opinions reveal that the mere fact that a medical report is provided at the request of counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of the report."). Rather, an ALJ may properly conclude that a physician has been improperly influenced only if the ALJ proffers evidence of "actual improprieties" that undermine the credibility of the physician's opinion. See Nguyen

1  v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996); Saelee v. Chater, 94 F.3d 520, 523
2  (9th Cir. 1996) (per curiam).  The ALJ proffered no supporting evidence of actual
3  improprieties in Dr. Steiger's opinion.

4      Second, the ALJ found that Dr. Steiger had based his opinion from a one-time
5  examination.  (See AR 27.)  The Court finds that this stated reason is not legally
6  sufficient because it is well-settled that the opinions of examining physicians (who
7  normally see claimants only once) are entitled to deference and subject to the same
8  legal standard that the Commissioner must apply to the opinions of treating
9  physicians.

10      Third, the ALJ found that Dr. Steiger relied "quite heavily" on plaintiff's
11  subjective complaints. (See AR 27.) In general, an ALJ may reject a medical opinion
12  if it is based to a large extent on a claimant's self-reports that have been properly
13  discounted as incredible.  See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir.
14  2008) (citation omitted). Here, however, the ALJ did not properly discount plaintiff's
15  self-reports as incredible.  See Burrell, 775 F.3d at 1141 (ALJ could not properly
16  reject treating physician's assessment as reliant primarily on claimant's own
17  subjective allegations where the ALJ failed to properly discredit claimant's
18  testimony).  Moreover, the record reflects that Dr. Steiger's opinion was based less
19  on plaintiff's self-reports than on objective clinical observations: Dr. Steiger stated
20  that his opinion was based on a review of plaintiff's diagnostic studies and medical
21  records, as well as a physical examination that revealed the following clinical
22  observations (see AR 370-74): a slow, deliberate gait; difficulty with heel walking;
23  tenderness over the bilateral posterior superior iliac spines and left sciatic notch;
24  limited range of motion of the lumbar spine, diminished sensation in the right lateral
25  thigh; limited straight leg raising in the sitting and supine position, bilaterally; and
26  positive Lasegue's testing bilaterally.  See Ghanim, 763 F.3d at 1162 ("[W]hen an
27  opinion is not more heavily based on a patient's self-reports than on clinical
28  observations, there is no evidentiary basis for rejecting the opinion.") (citing Ryan v.

1  Commissioner of Social Sec., 528 F.3d 1194, 1199 (9th Cir. 2008)).  The Court

2  therefore finds that the ALJ's third stated reason also was legally insufficient.

3       Finally, the ALJ found that Dr. Steiger's opinion was inconsistent with other

4  objective findings Dr. Steiger had made during the examination, specifically, findings

5  that reflected normal heel and toe walking, no tenderness of the thoracic spine, no

6  muscle spasms in the paralumber muscles of the dorsal or lumbar spine, and normal

7  motor strength.  (See AR 27; see also AR 370-72.)  However, the Court fails to see

8  how the ALJ's selective reliance on these findings undermines Dr. Steiger's opinion,

9  especially given the other clinical observations made by Dr. Steiger as described

10 above.  See Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) (an ALJ may

11 not properly reject a medical opinion based on a selective reliance on the relevant

12 evidence).  Moreover, to the extent that the ALJ reinterpreted the raw medical data

13 to reach a different assessment of plaintiff's condition, the ALJ was not qualified to

14 do so.  See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ who was

15 not qualified as a medical expert could not permissibly go outside record to consult

16 medical textbooks for purpose of making his own assessment of claimant's physical

17 condition); Manso-Pizarro v. Secretary of Health and Human Services, 76 F.3d 15,

18 17 (1st Cir. 1996) ("With few exceptions, . . . an ALJ, as a lay person, is not qualified

19 to interpret raw data in a medical record."); Ross v. Gardner, 365 F.2d 554, 558 (6th

20 Cir. 1966) ("While the Secretary may have expertise in respect of some matters, we

21 do not believe he supplants the medical expert."); see generally Nguyen, 172 F.3d at

22 35 (ALJ is not at liberty to ignore medical evidence or substitute his own views of the

23 medical evidence).  The Court therefore finds that the ALJ's fourth stated reason also

24 was legally insufficient.

25      Accordingly, the Court finds that reversal also is warranted based on the ALJ's

26 failure to properly consider the examining physician's opinions.

27 //

28 //

11

## CONCLUSION AND ORDER

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. <u>See, e.g.</u>, <u>Salvador v. Sullivan</u>, 917 F.2d 13, 15 (9th Cir. 1990); <u>McAllister</u>, 888 F.2d at 603; <u>Lewin v. Schweiker</u>, 654 F.2d 631, 635 (9th Cir. 1981). Remand is warranted where additional administrative proceedings could remedy defects in the decision. <u>See, e.g.</u>, <u>Kail v. Heckler</u>, 722 F.2d 1496, 1497 (9th Cir. 1984); <u>Lewin</u>, 654 F.2d at 635. Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, <u>Kornock v. Harris</u>, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits, <u>Bilby v. Schweiker</u>, 762 F.2d 716, 719 (9th Cir. 1985).

Where, as here, a claimant contends that he is entitled to an award of benefits because of an ALJ's failure to properly consider his subjective symptom testimony or medical evidence, the Court applies a three-step framework. <u>See</u> <u>Treichler</u>, 775 F.3d at 1099-1102; <u>see also</u> <u>Burrell</u>, 775 F.3d at 1141-42; <u>Garrison</u>, 759 F.3d at 1020. First, the Court asks whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. Second, the Court determines whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful. Third, if the Court concludes that no outstanding issues remain and further proceedings would not be useful, the Court may find the relevant testimony credible as a matter of law and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of the proceeding." <u>Treichler</u>, 775 F.3d at 1100-01 (citations omitted). Only when all three elements are satisfied does a case raise the "rare circumstances" that allow the Court to exercise its discretion to remand for an award of benefits. <u>See</u> <u>id.</u>

1    As an initial matter, the Court notes that while plaintiff has made a cursory
2 assertion that he is entitled to an award of benefits (see Jt Stip at 28), he has
3 completely failed to proffer any argument for that remedy in light of the foregoing
4 case authorities and has made no attempt to show that this case raises the rare
5 circumstances that would warrant remand for an award of benefits. Accordingly, this
6 circumstance militates in favor of the Court exercising its discretion to remand for
7 further proceedings.    See Vasquez, 572 F.3d at 597 (remanding for further
8 proceedings where neither party presented any argument about the effect of the ALJ's
9 errors, meaning that there were no facts presented that clearly indicated the proper
10 outcome).

11    Moreover, the Court finds that the second Treichler element has not been
12 satisfied because there remains an outstanding issue of a disability onset date.
13 Specifically, the existing medical evidence as to a disability onset date is ambiguous:
14 Dr. Levy appears to have stated that plaintiff's limitations arose either in "2008-2009"
15 or in 2011, while Dr. Steiger stated in August 2013 that plaintiff had been disabled
16 for "at least 12 months" but also stated that plaintiff's limitations arose in 2011 (see
17 AR 352, 375, 381). See Regennitter, 166 F.3d at 1300 (remanding for further
18 proceedings where disability onset date remained an unresolved issue); Luna v.
19 Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010) (same where the case has an
20 "outstanding issue" of "when Luna's disability began" and where "the evidence she
21 wants credited does not identify a particular onset date"); House v. Colvin, 583 Fed.
22 Appx. 628, 629-30 (9th Cir. 2014) (now citable for its persuasive value per Ninth
23 Circuit Rule 36-3) (same after noting that "Social Security regulations make clear that
24 determination of a disability onset date is a complex and fact-specific inquiry").

25    Based on its review and consideration of the entire record, the Court has
26 concluded on balance that a remand for further administrative proceedings pursuant
27 to sentence four of 42 U.S.C. § 405(g) is warranted here.  Accordingly, IT IS
28 HEREBY ORDERED that Judgment be entered reversing the decision of the

Commissioner of Social Security and remanding this matter for further administrative proceedings.[3]

DATED:  March 9, 2015

_____
ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE

---

[3]     It is not the Court's intent to limit the scope of the remand.

14